UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RYAN CHARLES DIEMOND,

                  Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                  Defendants.

_____/

Case No. 1:20-cv-473

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131; Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a); and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c).  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Corizon and Unknown Party for failure to state a claim.  The Court will also dismiss for failure to state a claim Plaintiff's claims against Defendants Rewerts and Niemiec, except for Plaintiff's claims against Rewerts and Niemiec in their respective official capacities

under the ADA and RA, which the Court will dismiss as duplicative of his claims against the Michigan Department of Corrections (MDOC).  Plaintiff's ADA and RA claims against the MDOC remain.

<u>**Discussion**</u>

## I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Montcalm County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the MDOC, Corizon—the contracted provider of health care services for the MDOC, an unknown employee of Corizon, DRF Warden R. Rewerts, and DRF Resident Unit Manager J. Niemiec.

Plaintiff alleges that he suffers from Attention Deficit Hyperactivity Disorder (ADHD), carpal tunnel syndrome and tendon damage with scarring in his right hand and wrist, and complex regional pain syndrome (CRPS) in his right hand and wrist.  Plaintiff describes CRPS as "severe chronic pain out of proportion to the original injury."  (Compl., ECF No. 1, PageID.3.)  As a result of Plaintiff's condition, the MDOC has issued a special accommodations medical detail that limits lifting to 10 pounds and discourages "repetitive motion tasks."  (*Id*., PageID.4.)  Plaintiff claims that because of his disabling conditions, it takes him more time and effort to complete mundane tasks, such as filing grievances.

Plaintiff states that on March 22, 2020, he sent a kite to Defendant Rewerts advising the warden about Plaintiff's conditions and his consequent need for assistance to access the benefits of the DRF grievance program.  (Mar. 22, 2020 Kite, ECF No. 1-3, PageID.22.)  Subsequently, Plaintiff was interviewed by Defendant Niemiec.  Plaintiff told Niemiec that Plaintiff wanted to commence legal proceedings under the ADA and RA against MDOC, Corizon, and their employees, but that he must first file grievances.  Plaintiff explained that he needed help

2

because it was so painful to write grievances.[1]  Defendant Niemiec, after consulting with an unknown Corizon employee, denied Plaintiff's request because the Corizon employee told Niemiec that Plaintiff's condition was not debilitating and Plaintiff could take breaks while writing his grievances.  (Compl., ECF No. 1, PageID.5.)

Plaintiff contends that Defendants' actions violate the ADA and the RA.  Plaintiff complains that Defendant Niemiec should have assigned a Legal Writer under the DRF Legal Writer program.  He suggests that making Plaintiff write his grievances despite the pain violates Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment.  Moreover, Plaintiff claims Defendants have violated his First Amendment right to petition for redress of grievances and his allegations implicate his First Amendment right to access the Courts.  Plaintiff also states, in an entirely conclusory fashion, that Defendants agreed to take these actions—and thus conspired—and did so in retaliation—but he does not say what prompted the retaliation. Finally, Plaintiff contends that Defendants have violated RICO.

Plaintiff seeks a declaration that he has set forth a *prima facie* case of violation of the ADA and RA.  He asks the Court to enjoin Defendants' continuing violations.  Finally, Plaintiff seeks compensatory and punitive damages for his injuries, including mental and emotional injuries, trebled under RICO.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

---

[1] Plaintiff contends that it is particularly painful to write grievances because the MDOC grievance form is five color-coded pages thick and he must press heavily when he writes to transfer the writing to all five copies of the form. (Compl., ECF No. 1, PageID.5; Grievance Form, ECF No. 1-4, PageID26.)

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III.    Sovereign immunity

Plaintiff sues the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).

With regard to claims under § 1983, Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Plaintiff's § 1983 claims against the MDOC are properly dismissed.

The Sixth Circuit, citing *Quern*, has also concluded that Congress did not indicate its intent to abrogate state sovereign immunity in the RICO Act either. *Chaz Const., L.L.C. v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005). Therefore, Plaintiff's RICO claims against the MDOC are properly dismissed as well.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus v. Butler,* 591 F.3d 474, 482 (6th Cir. 2010). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

The RA specifically applies to programs or activities receiving federal financial assistance. By accepting federal funds, states waive sovereign immunity from claims under the RA. *Nihiser v. Ohio EPA*, 269 F.3d 626-628 (6th Cir. 2001). At this preliminary stage of the

proceedings, the Court will presume that the MDOC receives federal assistance for its prison programs.

## IV.    First Amendment

### A.    The right to petition for redress of grievances

Plaintiff complains that Defendants have interfered with his First Amendment right to petition for redress of grievances.  He bases that complaint on a perceived interference with his ability to file administrative grievances under the MDOC grievance policy directive.

The First Amendment right to petition the government for redress stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress.  *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979).  In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression."  *McDonald v. Smith*, 472 U.S. 479, 482 (1985).  The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment.  A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials.").  Thus, Plaintiff has a First Amendment right to submit complaints about prison officials, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on those complaints.

Plaintiff does not have a right to a particular means of submitting a grievance. An inmate does not have a constitutionally protected interest in a jail or prison grievance procedure or the right to an effective procedure. *Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "The State has not hampered the ability of prison inmates to communicate their grievances to correctional officials [where the State has] merely affected one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials." *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977). At most, Defendants' requirements have impacted Plaintiff's ability to submit grievances through the prison's formal administrative grievance procedure. Plaintiff could, and did, submit his complaints by way of kite and direct interview. Moreover, Plaintiff has been complaining about his difficulty in filing grievances for years. *See Diemond v. Mich. Dep't of Corr. et al.*, No. 1:17-cv-928 (W.D. Mich.) (Am. Compl. & Ex., ECF Nos. 13, 13-1 to 13-9).[2]

Plaintiff has failed to allege facts showing that Defendants have interfered with Plaintiff's right to petition the government. At most he has alleged that Defendants have hampered one particular way to present a complaint. Accordingly, Plaintiff has failed to state a First Amendment claim for interference with his right to submit a grievance.

**B.      Access to the courts**

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right

---

[2] The present suit is Plaintiff's second lawsuit raising the same claims. The prior suit raised claims against prison officials at four correctional facilities where Plaintiff was housed before his transfer to DRF.

of access to the courts by providing law libraries or alternative sources of legal information for

prisoners.  *Id*. at 817.  The Court further noted that in addition to law libraries or alternative sources

of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal

documents, notarial services to authenticate them, and with stamps to mail them."  *Id*. at 824-25.

The right of access to the courts also prohibits prison officials from erecting barriers that may

impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not,

however, without limit.  The Supreme Court has strictly limited the types of cases to which the

right applies:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims.  The tools it requires to be provided are those that the
> inmates need in order to attack their sentences, directly or collaterally, and in order
> to challenge the conditions of their confinement.  Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis v. Casey,* 518 U.S. 343, 355 (1996).   Although the *Lewis* Court's conclusion speaks

generally about "conditions of confinement" claims, the discussion that precedes that conclusion

makes clear that the Court meant to include only "'civil rights actions'—i.e., actions under 42

U.S.C. § 1983 to vindicate 'basic constitutional rights.'"  *Id*. at 354.  The Sixth Circuit has

recognized this limitation: "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc).  Claims under the ADA or RA—or RICO—are not included in the

protected list.

When Plaintiff told Defendant Niemiec he needed help to file a grievance, he

informed Niemiec of the subject of the grievance:  violations of the ADA and the RA.  Plaintiff's

access to the courts to pursue such claims is simply not protected.  Therefore, to the extent

Defendants' actions, or inactions, hampered Plaintiff's ability to pursue his ADA/RA grievance or to obtain the assistance of a legal writer to pursue an ADA/RA claim in court, it is not a constitutional violation.

### C.     First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that

the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Therefore, when Plaintiff complained to Defendant Rewerts and voiced his complaint and his intention to file a grievance to Defendant Niemiec during the subsequent interview, Plaintiff engaged in protected conduct.

Even if Plaintiff could show that Niemiec's determination that Plaintiff could write his own grievance constituted adverse action, he has not alleged that the determination was motivated by Plaintiff's protected conduct. Plaintiff wrote a kite to Defendant Rewerts requesting an accommodation. Defendant Niemiec interviewed Plaintiff regarding that request. If Niemiec's denial of that request constitutes retaliation for its making, every time a prisoner request is denied it would give rise to a First Amendment retaliation claim. Moreover, Plaintiff alleges that Niemiec denied the request because a Corizon healthcare provider told him Plaintiff could write a grievance if he took breaks. There is not even the hint of a retaliatory motive in Plaintiff's allegations. Therefore, Plaintiff has failed to state a First Amendment retaliation claim.

## V.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

An Eighth Amendment claim includes objective and subjective components:  (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834; *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Farmer*, 511 U.S. at 837.  Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close

11

to common-law recklessness.  *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4).

Plaintiff has failed to allege the objective component.  Imposing a requirement that formal administrative grievances be submitted in writing—even if writing might be painful—does not deny Plaintiff the minimal civilized measure of life's necessities, particularly where Petitioner could and did submit his grievance in less painful forms: a one-copy kite and by way of oral complaint during the interview.  Additionally, Plaintiff has failed to allege the subjective component.  Rewerts's actions cannot be described as reckless; they resulted in Niemiec's interview of Plaintiff to investigate the claim.  Niemiec's actions cannot be described as reckless; Plaintiff acknowledges Niemiec consulted healthcare regarding Plaintiff's ability to write a grievance.  Finally, the facts Plaintiff alleges do not support the inference that the unknown Corizon healthcare worker that Niemiec consulted was reckless.  Plaintiff was seen by healthcare personnel just days before his kite to Rewerts.  That examination prompted the provision of a wrist brace and the limitations on lifting and repetitive motion tasks.  (Medical Detail Special Accommodations, ECF No. 1-1, PageID.12.)  The instructions provided to Niemiec were entirely consistent with Plaintiff's accommodations.  Therefore, Plaintiff has failed to state a claim for violation of his Eighth Amendment rights.

## VI.    Conspiracy

Plaintiff suggests that Defendants conspired to violate his rights: "it appears that the Defendants may have agreed with one another to intentionally interfere with Plaintiff in the exercise and/or enjoyment of his right to petition the government for redress of grievances . . . ." (Compl., ECF No. 1, PageID.5.)  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff

must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a two or three-week time period involving a few individuals. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that each Defendant played some role in denying the relief Plaintiff sought. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents were simply steps in a process that Plaintiff initiated, Plaintiff fails to state a plausible claim of conspiracy.

## VII.    RICO

RICO prohibits a person who is employed by or associated with any enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity or collection of an unlawful debt. 18 U.S.C. § 1962(c). Thus, a RICO claim requires factual allegations establishing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Company*, Inc., 473 U.S. 479, 496 (1985). Although Plaintiff parrots the key RICO terms in his complaint, he offers no factual allegations to support them.

"Racketeering activity" is defined to include specific state criminal offenses and specific federal criminal offenses. 18 U.S.C. § 1961(1). Plaintiff does not mention any offenses that constitute "racketeering activity" in his complaint. Plaintiff's failure to identify any predicate acts of racketeering activity is fatal to his RICO claim. *See Moon v. Harrison Piping Supply Co.*, 465 F.3d 719, 724 (6th Cir. 2006) (court held that pleading two predicate acts was "necessary to sustain a RICO claim . . . [although it] may not be sufficient . . . ."). Plaintiff has failed to state a RICO claim upon which relief can be granted. Moreover, Plaintiff's allegations of a RICO violation are patently frivolous.

## VIII.  ADA and RA

### A.    ADA/RA failure to accommodate

Plaintiff alleges that Defendants violated his rights under Title II of the ADA and § 504 of the RA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[3] Discrimination under Title II

---

[3] Similarly, § 504 of the RA provides in pertinent part:

includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]"  42 U.S.C. § 12112(b)(5)(A).  To establish a prima facie case under the ADA—and the RA, *see Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 WL 7890769, at *2-3 (6th Cir. Oct. 31, 2018)—for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation.  *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The proper defendant under a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002).  Nonetheless, Plaintiff purports to allege ADA claims against the individual Defendants in their respective individual capacities.  There can be no such claims.  Plaintiff therefore fails to state

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together."  *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n.2 (6th Cir. 1995)).

individual-capacity ADA claims against Defendants Rewerts, Niemiec, or the unknown healthcare worker consulted by Niemiec.

Plaintiff also fails to state an ADA claim against Corizon.  "[A] private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (determining that Corizon Health and its employees were not public entities under the ADA) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013) (concluding that a private health provider that contracted with a state prison was not a "public entity" under the ADA); *Thompson v. Mich. Dep't of Corr.*, No. 17-10490, 2018 WL 5094078, at *2 (E.D. Mich. Aug. 10, 2018) (same).  The Court therefore will dismiss Plaintiff's ADA claim against Defendant Corizon.  Moreover, because the unknown party is alleged to be an employee of Corizon, Plaintiff's official capacity claim against that Defendant is properly dismissed as well.

Plaintiff's claims against the MDOC and Rewerts and Niemiec in their respective official capacities are appropriate; but, the claims are also redundant.  Each of those ADA claims is, for all intents and purposes, against the state of Michigan as the real party-in-interest.  *See, e.g., Brotherton v. Cleveland,* 173 F.3d 552, 560-61 (6th Cir. 2010).  The courts have recognized that, where an entity is named as a defendant, official-capacity claims against employees of the entity are redundant.  *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official-capacity suits against the defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v.*

*Cty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly,* 550 U.S. at 561-62, and *Iqbal*, 556 U.S. at 679. For similar reasons, Plaintiff's official-capacity claims against Defendants Rewerts and Niemiec are redundant of one another and of Plaintiff's ADA/RA claims against the MDOC, because each constitutes an identical suit against the MDOC or the State of Michigan for a violation of the ADA or RA. *Foster*, 573 F. App'x at 390 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Court therefore will allow Plaintiff's official-capacity claims under the ADA only against Defendant MDOC. The Court will dismiss Plaintiff's official-capacity claims against Defendants Rewerts, and Niemiec, as redundant.

Although Plaintiff's ADA and RA claims against all Defendants other than the MDOC are properly dismissed, it appears that Plaintiff's allegations of ADA and RA violations against the MDOC suffice to state a claim. Accordingly, that claim remains in the suit.

### B.     ADA/RA retaliation

Plaintiff also claims that Defendants retaliated against him based on his request for an accommodation to assist him in writing grievances. The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).[4]  To establish a prima facie case of ADA retaliation, Plaintiff must show that:

> (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and

---

[4] The RA incorporates the anti-retaliation provision of Title VI of the Civil Rights Act, which is similar to the anti-retaliation provision of the ADA. *Wilbanks v. Ypsilanti Cmty. Schs.*, 742 F. App'x 84, 86-87 (6th Cir. 2018).

(4) there was a causal connection between the protected activity and the adverse
action. *Id.* Establishing a prima facie case of retaliation is a "low hurdle."

*Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

The "adverse action" and "causal connection" requirements parallel the requirements set forth above with regard to Plaintiff's First Amendment retaliation claim. Plaintiff's ADA/RA retaliation claims fail for the same reason his First Amendment retaliation claim did. Plaintiff has failed to allege facts that permit an inference that Niemiec's denial of the requested accommodation was "caused" by Plaintiff's request. And, at the most basic level, if denying an accommodation is deemed adverse action that is retaliatory for the making of the request, simply alleging the denial of an accommodation—and Plaintiff has done nothing more here—would constitute a prima facie case of retaliation. *See, e.g., Gipson v. Tawas Police Auth.*, 794 F. App'x 503, 508 n.6 (6th Cir. 2019) (court concluded that requiring a medical examination in response to a request for accommodation could not be considered adverse action because then "every employee who is required to take a medical exam when he requests accommodations could make out a prima facie case of retaliation."). Therefore, Plaintiff has failed to state a claim for ADA or RA retaliation.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Rewerts, Niemiec, Unknown Party, and Corizon will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), with the exception of Plaintiff's ADA and RA claims against Defendants Rewerts and Niemiec in their respective official capacities, which are dismissed as redundant. The Court will also dismiss, for failure to state a claim or on grounds of sovereign immunity, all claims against Defendant MDOC, except for Plaintiff's ADA and RA claims for

18

failure to accommodate Plaintiff's alleged disabilities in the administrative grievance program.

Plaintiff's ADA and RA claims against Defendant MDOC remain in the case.

An order consistent with this opinion will be entered.


Dated:   June 26, 2020                           /s/ Janet T. Neff
                                                 Janet T. Neff
                                                 United States District Judge