UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN CHARLES DIEMOND,

              Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

              Defendants.
_____/

Case No. 1:20-cv-473

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

       This is a *pro se* civil rights action brought by plaintiff Ryan Charles Diemond, a state prisoner in the custody of the Michigan Department of Corrections (MDOC).   Plaintiff alleged violations of 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c).   The Court dismissed all defendants except the MDOC. This matter is now before the Court on the MDOC's motion for summary judgment for failing to exhaust administrative remedies (ECF No. 22).

    **I.**      **Background**

       The events about which plaintiff complains occurred at the MDOC's Carson City Correctional Facility (DRF).   *See* Opinion (ECF No. 4, PageID.47).[1]   All claims have been dismissed "except for Plaintiff's ADA and RA claims for failure to accommodate Plaintiff's alleged disabilities in the administrative grievance program."   *Id.* at PageID.63-64. "Plaintiff

---

[1] The Court notes that plaintiff is now in custody at defendant MDOC's Muskegon Correctional Facility (MCF).

alleges that he suffers from Attention Deficit Hyperactivity Disorder (ADHD), carpal tunnel syndrome and tendon damage with scarring in his right hand and wrist, and complex regional pain syndrome (CRPS) in his right hand and wrist."  *Id.* at PageID.47.   Plaintiff has had some medical accommodations: no repetitive motion tasks (Feb. 13, 2020); lifting restriction of 10 pounds (March 12, 2020); and "Brace – wrist" (March 12, 2020).  *See* Special Accommodations (ECF No. 1-1, PageID.12).   Plaintiff states that on March 22, 2020, he sent a kite to former defendant DRF Warden Rewerts advising the warden about his need for assistance to access the benefits of DRF's grievance program.  *Id*.  *See* Kite to Warden (March 22, 2020) ("I am in need of help with accessing the benefits of the D.R.F. Grievance Program") (ECF No. 1-3, Page22).

During an interview with former defendant DRF Resident Unit Manager (RUM) J. Niemiec,

> Plaintiff told Niemiec that Plaintiff wanted to commence legal proceedings under the ADA and RA against MDOC, Corizon, and their employees, but that he must first file grievances. Plaintiff explained that he needed help because it was so painful to write grievances.   Defendant Niemiec, after consulting with an unknown Corizon employee, denied Plaintiff's request because the Corizon employee told Niemiec that Plaintiff's condition was not debilitating and Plaintiff could take breaks while writing his grievances. (Compl., ECF No. 1, PageID.5.)

Opinion at PageID.47-48 (footnote omitted).   According to plaintiff, it "is particularly painful to write grievances because the MDOC grievance form is five color-coded pages thick, and he must press heavily when he writes to transfer the writing to all five copies of the form."  *Id*. at PageID.48, fn. 1 citing Compl. (ECF No. 1, PageID.5).   Plaintiff seeks a declaration that he has demonstrated *prima facie* case violations of the ADA and the RA, and apparently wants the MDOC to assign him a legal writer to draft his grievances.   Opinion at PageID.48.   Plaintiff also wants

$450,000.00 in damages and an injunction "to prevent any future instances of similar unlawful conduct."   Compl. at PageID.8.

## II.    Defendant's motion for summary judgment

## A.    Legal standard for summary judgment

Defendant MDOC seeks summary judgment because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."    *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).    A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.    One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.    This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).    In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.    *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.    Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint.    *See Bell v. Konteh*, 450 F.3d 651,

654 (6th Cir. 2006).

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).[2] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

---

[2] The Court notes that the MDOC revised the grievance policy on March 18, 2019.

### 3.    Discussion

Plaintiff's RA and ADA claims arise out of former Warden Rewerts and former defendant RUM Niemiec's denial of plaintiff's request for assistance in completing grievances. *See* Opinion at PageID.62.[3] Plaintiff appears to have made this request pursuant to Policy Directive 03.02.130 ¶ N, which states:

> Wardens and FOA Region Managers shall ensure prisoners and parolees are provided assistance in completing a grievance form, if s/he determines it is needed. In such cases, assistance shall be provided by a staff member who is not involved in the grievance.

Plaintiff could have filed a grievance on the adverse decision pursuant to Policy Directive 03.02.130 ¶ F, which states:

> Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy and related procedures.

The gist of plaintiff's argument is: that he cannot file grievances because it is extremely painful to press down on the five copies of the MDOC grievance form with his right hand; that this problem is compounded by his ADHD; that he sent a kite to Warden Rewerts for assistance; that RUM Niemiec interviewed him with respect to the kite; and that neither Rewerts nor Niemiec gave him the requested assistance.  For the reasons discussed, *infra*, defendant should be granted summary judgment because there is no evidence that plaintiff exhausted a grievance regarding the denial of his request for assistance under ¶ N or the denial of a request for

---

[3] "Plaintiff's official-capacity claims against Defendants Rewerts and Niemiec are redundant of one another and of Plaintiff's ADA/RA claims against the MDOC, because each constitutes an identical suit against the MDOC or the State of Michigan for a violation of the ADA or RA. The Court therefore will allow Plaintiff's official-capacity claims under the ADA only against Defendant MDOC."  Opinion at PageID.62 (internal citation omitted).

accommodation under the ADA or the RA.   *See* MDOC Prisoner Step III Grievance Report (ECF No. 25); Policy Directive 04.06.155 ("Offenders with disabilities").[4]

In his response, plaintiff contends, among other things, that defendant's motion for summary judgment is untimely, that he is entitled to a default judgment,[5] that he is entitled to a jury trial, that the lack of accommodations prevent him from filing grievances, and that MDOC employees are tampering with evidence and obstructing justice.   *See* Plaintiff's Response (ECF No. 43, PageID.196-202).   Plaintiff contends that since 2013, MDOC officials have engaged in misconduct which has made the grievance procedure unavailable as to him:

> While 42 U.S.C. § 1997e(a) requires a prisoner to exhaust his or her available administrative remedies before filing an action, such remedies were, and still are being, made unavailable due to continuing overt acts and/or omissions of affirmative misconducts, *i.e.*, since 2013, employees of the M.D.O.C. and Corizon have continuously interferred [sic] with Ryan [Diemond] in the exercise and enjoyment of his right to be afforded reasonable accommodations in the due administration of justice such as, but not limited to, properly exhausting the administrative remedies at issue in this action.

*Id*. at PageID.198-199.   Plaintiff also contends that "the reason why [he] failed to properly file a grievance is because employees of the M.D.O.C. and [former defendant] Corizon refuse to provide the requisite forms of accommodations so that [he] could do so."   *Id*. at PageID.199.

---

[4] Shortly before his transfer to DRF, plaintiff filed a written request for accommodation (CSJ-562) at the Kinross Correctional Facility (KCF) (Feb. 20, 2020) (ECF No. 43-1, PageID.207).   *See* Policy Directive 04.06.155 ¶ O. In that request, plaintiff stated, "I would like the assignment of an aide and other services to remove communication barriers so that I have an equal opportunity at properly exhausting available administrative remedies." Request at PageID.207.   Plaintiff met with KCF officials who resolved the request stating, "Your concerns do not pertain to a Title II ADA request and should be addressed through Health Care or the Prisoner/Parolee Grievance Process."   *Id*. There is no evidence that plaintiff filed a request for accommodation at DRF.

[5] The Court notes that while plaintiff wants to default defendant for non-appearance, defendant is not required to file an answer.   *See* Case Management Order (ECF No. 27, PageID.158) ("By virtue of 42 U.S.C. § 1997e(g)(1), no defendant is required to file a response to the complaint.").

Plaintiff's contention that the grievance procedure has been unavailable to him since 2013 is meritless.   By the Court's count, plaintiff has exhausted or attempted to exhaust at least 56 grievances since 2014.   *See* Step III Grievance Report at PageID.141-155.   In this regard, plaintiff filed a Step III appeal in February 2020 (about one month before the alleged incident). *Id*. at PageID.141).   In addition, plaintiff was and is able to engage in written communications. Assuming that plaintiff has trouble writing with his right hand, he says nothing about using his left hand or typing out grievances.   Plaintiff had access to a typewriter to type out this complaint (ECF No. 1, PageID.1-8), and has demonstrated his ability to create and file a number of handwritten papers in this case.   *See, e.g.*, ECF Nos. 2, 11, 14, 18, 29-32, 34, 38, 40-43 and 45.

Finally, while both plaintiff and defendant MDOC discuss whether plaintiff filed a request for an accommodation pursuant to Policy Directive 04.06.155, the relevant consideration is whether plaintiff exhausted a grievance under Policy Directive 03.02.130 prior to filing this lawsuit. *See O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1061-62 (9th Cir. 2007) ("we interpret § 1997e(a) as requiring prisoners to exhaust prison administrative remedies for claims under Title II of the ADA and the Rehabilitation Act, notwithstanding the absence of a federal administrative exhaustion requirement in these statutes"). *See also*, *Thompson v. Robertson*, No. 3:15-CV-1527, 2017 WL 1048018 at *5 (M.D. Tenn. March 20, 2017) ("In order to bring a federal lawsuit based on prison officials' violation of the Americans With Disabilities Act or other federal law, the plaintiff must first seek a reasonable accommodation from the appropriate prison authorities, bring a grievance in accordance with the prison's Grievance Policy if such requests are not satisfactorily resolved, and pursue the denial or unfavorable outcome of the grievances through a Level III appeal."); *Basat v. Caruso*, No. CIV. 07-13332, 2008 WL

275679 at *3 (E.D. Mich. Jan. 31, 2008) ("The statute [42 U.S.C. § 1997e(a)] does not apply solely to actions brought under 1983, but includes any action brought under Federal law which would include a claim based on the ADA.").   As discussed, the procedure for grieving this situation is set forth in Policy Directive 03.02.130 ¶¶ F and N.

Plaintiff has failed to properly exhaust a grievance against defendant MDOC.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.   Accordingly, defendant's motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant MDOC's motion for summary judgment based on failure to exhaust (ECF No. 22) be **GRANTED** and that this action be **TERMINATED**.

Dated:   May 25, 2021                              /s/ Ray Kent
                                                   RAY KENT
                                                   United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).